THE BOARD OF SUPERVISORS OF THE COUNTY OF ONTONAGON v. THE BOARD OF SUPERVISORS OF THE COUNTY OF GOGEBIC.

*Taxes—Division of county.*

1. How. Stat. §§ 457–462, providing for the settlement between counties when a county is divided and a new one created from a part of its territory, contemplate a division of property and debts and credits.

2. The Auditor General is bound to take notice of the statutes changing county boundaries and creating new counties, and to know what land falls in one and what in the other; and where a county is divided, and a new one created from a portion of

74 MICH—46.

its territory, he should apportion the State tax chargeable to the original county prior to such division between it and the new county upon the basis of the assessed value of the land in *each* for the year in which the last State equalization was made prior to such division, which will remain the standard until the next equalization.

*Mandamus.* Argued April 16, 1889. Denied April 24, 1889.

Relators apply for a *mandamus* to compel an accounting. The facts are stated in the opinion.

*Norman W. Haire (Ball & Hanscom,* of counsel), for relators.

*Chas. M. Howell (M. M. Riley* and *Cahill & Ostrander,* of counsel), for respondents.

CAMPBELL, J. Relators seek to have the settlement made between the counties of Ontonagon and Gogebic opened, and to require respondents to meet with them for the purpose of arranging for a proper and complete settlement providing for the apportionment of State taxes betweeen the two counties.

The difficulty arose in this way: The county of Gogebic was organized in the spring of 1887 by an act of the Legislature. Local Acts of 1887, p. 23. By that statute it was directed that a settlement be had between the counties in accordance with existing laws. That settlement was had by leaving to each county the swamp lands within it, as the law itself requires (How. Stat. § 457), and apportioning the debts equally. In 1886 the usual equalization of assessments was made by the State board, which the Constitution requires to stand as furnishing the basis for apportioning State taxes till the next equalization five years thereafter. The statute providing for

the settlement between counties when a county is divided and a new one created (How. Stat. §§ 457-462) does not in terms refer to any matters but property and debts and credits, and, as already said, these were properly apportioned; and, as now claimed, the liability of Ontonagon to bear the whole State taxes for five years was overlooked. But respondents claim it was not overlooked, but that Ontonagon got a more liberal settlement in consideration of this. The debts, however, were figured up in dollars and cents, and the payment provided for by installments.

In 1887 the Auditor General apportioned the annual State tax, and laid upon Ontonagon the whole amount which it would have borne had there been no division, being $7,734.75. Whether this was done from oversight, or from a supposition that the new county could not be charged until the next State equalization, is not shown. Ontonagon county collected most of it, and paid it over, supposing it had been laid on the basis of the proportion which should have followed the division of the counties. In 1888 the Auditor General again laid the proportion of both counties, being $5,784.81, on Ontonagon alone. Discovering this, Ontonagon county applied to Gogebic county for a new and correct settlement, which was refused, and the refusal is the occasion for this petition for *mandamus*.

The parties have come to an issue of fact, whether this liability of Ontonagon to bear the double burden was or was not included in the settlement, and respondents present a claim that if it was not so included there was a mistake in the settlement which needs correction. The proceedings on the settlement are of record, and they cannot be construed as including anything but existing property and liabilities. Neither does the statute contemplate any other division. How. Stat. §§ 458, 460. It

is provided by section 461 that, if the boards cannot agree, the settlement may be made by five persons commissioned for the purpose by the circuit court of an adjoining county. By section 463 it is provided that counties may implead each other at law or in equity on any matters of variance, and get relief in that way. If this new question of apportionment requires and admits of an enforced formal adjustment, there seems to be no difficulty in resorting to the proper judicial tribunals. If Ontonagon county has paid money to the use of Gogebic, it can be recovered back. But it is obvious that no settlement could very well be made in advance of future State taxes, which no one could have the means of calculating until the whole State burden for any year is fixed and apportioned. There is no need of a *mandamus* to collect the taxes already paid for the account of Gogebic, and we do not see any occasion or room for inquiring whether this speculative contingency of overassessment was made in any one's mind a part of the settlement. The law made no provision for it, and the settlement on its face complies with the law, and does not refer to it. We do not think this issue should be sent down for trial. The settlement cannot be disturbed on *mandamus*.

The whole matter, so far as the excessive burden of taxes is concerned, rests on a misapprehension. The Constitution expressly requires the equalization of assessments every five years, and the law requires State taxes to be levied for five years on the basis of the last equalization. How. Stat. § 322. But this does not mean that when two counties are made out of one the old county must bear the whole burden. It was not meant that any county should be relieved from its share, nor that any county should be over-burdened. In order to make the State equalization, the board of equalization is to be furnished by each county, through the medium of the Auditor

General, with the last assessment of property in every township as assessed and equalized, so that it has not only the aggregate assessment of each county, but the aggregate of each township. Section 326. Upon each assessment roll the valuations under one law include by separate descriptions the various parcels of land in every township, as fixed and equalized by the proper local authority. The State board makes no change in particular assessments, but, if not satisfied with the local county valuation, a percentage is added to or deducted from the aggregate of that assessed in the county. Section 322. The effect of this is to make every item assessed, raised or diminished in the same ratio all over the county, and the proportions are got at by a simple process of calculation.

The Auditor General is bound to take notice of the statutes changing county boundaries and creating new counties, and is bound to know what land falls in one and what in the other. In the present case the division made followed throughout the government township lines. The reports of assessments made to the State board must usually, if properly drawn, furnish to the Auditor General, who has direct access to them, the means of calculating the precise share to be laid on each of the counties of what would have been laid on Ontonagon had it remained undivided. The proportion which the assessment rolls of 1886 in the townships now belonging to Gogebic bear to the aggregate assessments of all the towns then in Ontonagon furnishes at once the rates of apportionment, and that proportion remains the standard till the next State equalization. If the reports sent to the State board are for any reason lacking in fullness (which is not likely), the original rolls are always accessible, and the Auditor General can easily get the informa-

tion. But under the constitutional rules of equality no county can be made to bear any burden but its own.

So far as the assessments of 1887 and 1888 are concerned, there is no apparent way now for the Auditor General, without special legislation, to correct the error, and the relators, if no amicable settlement can be made, can resort to the usual judicial remedies. For the future no such difficulty will arise. We have no doubt of the power and duty of the Auditor General to obtain the means of a true apportionment according to the assessments of 1886.

The *mandamus* will be denied, without costs, and the parties remanded to their legal remedies.

The other Justices concurred.